# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 17-397V**
**Filed: July 30, 2018**
UNPUBLISHED

|  |  |
|---|---|
| JAMES BAUMANN,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Special Processing Unit (SPU);<br>Ruling on Entitlement; Table Injury;<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Amy A. Senerth, Muller Brazil, LLP, Dresher, PA, for petitioner.*
*Linda Sara Renzi, U.S. Department of Justice, Washington, DC, for respondent.*

## FINDING OF FACT AND RULING ON ENTITLEMENT[1]

**Dorsey**, Chief Special Master:

  On March 21, 2017, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act").  Petitioner alleges that he suffered left shoulder injuries resulting from adverse effects of an influenza ("flu") vaccine administered November 19, 2015.  Petition at 1.  The case was assigned to the Special Processing Unit of the Office of Special Masters.  Following a fact hearing held in the case, the undersigned finds that petitioner suffered a shoulder injury related to vaccine administration ("SIRVA"), the onset of which occurred within 48 hours or vaccination.  Accordingly, the undersigned further finds that petitioner is entitled to compensation for a Table Injury of SIRVA following receipt of a flu vaccine.

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.      Procedural History

The petition in this case was filed on March 21, 2017, along with exhibits marked 1-5, including a vaccination record as well as medical records from Beth Family Health (Dr. Chamberlain), Dr. Kuhn, and Bethel Physical Therapy.   Additional medical records from prior to petitioner's injury-causing vaccination were later filed as Exhibit 7 on June 6, 2017.  Affidavits by petitioner marked as Exhibits 6 and 8 were filed on March 27, 2017, and June 7, 2017, respectively.

On December 11, 2017, respondent filed his Rule 4(c) report in which he argued that this case is not appropriate for compensation.  Respondent's Rule 4(c) Report at 1. Specifically, respondent asserted that "petitioner had a prior history of shoulder pain one year before receiving his flu vaccine.  In addition, petitioner cannot establish that the onset of his shoulder pain occurred within forty-eight hours of the receipt of his November 19, 2015 flu vaccine.  Petitioner did not seek treatment or report any shoulder pain until February 2016, three months after his vaccine.  Significantly, at that time, he did not associate his flu vaccine with the onset of his shoulder pain during multiple medical visits . . . It was not until five months post-vaccine that petitioner began to report that the onset of his shoulder pain occurred immediately after his November 19, 2015 flu vaccine, apparently after finding information about SIRVA [shoulder injury related to vaccine administration] on the internet."   *Id.* at 5 (internal citations omitted).

On March 15, 2018, petitioner filed additional witness affidavits by Denise Baumann as well as petitioner's employers, Amy and Edward Yasko. (ECF Nos. 34-35.)

A video fact hearing was subsequently held on May 9, 2018.  Mr. and Mrs. Baumann testified.  *See* Transcript of Proceedings ("Tr.") held May 31, 2018 (ECF No. 45).

## II.      Summary of Relevant Medical Records[3]

Petitioner received a flu vaccine in his left arm on November 19, 2014. Ex. 9, p. 1.  Three months later, on February 17, 2016, petitioner presented to his primary care physician (Dr. Chamberlain) with, *inter alia*, a complaint of shoulder pain. Ex. 2, p. 18. The history of present illness is marked only "M.M." Exam revealed painful range of motion and petitioner was referred to physical therapy. *Id.*  Petitioner returned to Dr. Chamberlain on March 2, 2016, for a follow-up regarding his shoulder pain. Ex. 2, p. 21. Petitioner was given physical therapy and orthopedic referrals. *Id.*  A further visit on March 30, 2017, reflected ongoing shoulder pain.  Ex. 2, p. 28.

On April 11, 2016, petitioner presented for a physical therapy evaluation. Ex. 2, pp. 37-38.  Petitioner reported that he developed left shoulder pain following a flu

---

[3] The following is an abbreviated history of petitioner's medical records as most relevant to determining the onset of his shoulder injury.  However, the undersigned has reviewed the entirety of petitioner's medical records and considered the whole record in reaching her findings.

vaccine in November.[4]  He indicated that he had done internet research on the subject. *Id.*  Petitioner was assessed as having poor active range of motion due to pain. *Id.*

On May 17, 2016, petitioner reported to his physician that he had seen no improvement after one month of physical therapy. Ex. 2, p. 31.  He was referred to an orthopedist and further physical therapy. *Id.*  He attended four more physical therapy sessions, reporting minimal improvement. *Id.* at 41.

On June 27, 2016, petitioner was seen by an orthopedist (Dr. Kuhn).  Ex. 3, p. 13-15. Petitioner reported that he had "pain since he got a flu shot in November 2015, pain much worse with movement and very sharp at times."[5] *Id.* at 13.  Petitioner had positive signs of impingement and was diagnosed as having inflammation of the rotator cuff, either bursitis or tendonitis. *Id.* at 15.

Previously, petitioner had reported a workplace injury in September of 2014 that resulted in shoulder pain. Ex. 7, p. 32.  The notation did not mark whether the right or left shoulder was impacted. *Id.*  Petitioner was recommended ibuprofen and to avoid lifting heavy objects for two weeks. *Id.*  No further notations regarding this shoulder pain are included in any of petitioner's medical records.

Petitioner's medical records also indicate that petitioner established care with Dr. Chamberlain on August 4, 2015, after relocating from England (Ex. 2, p. 6), but that he did not gain health insurance until January 1, 2016 (Ex. 4, p. 35).  A notation on November 19, 2015, indicated that at that time petitioner was still looking for insurance. Ex. 2, p. 14.

### III.   Fact Hearing and Findings of Fact

In addition to the above medical records, the undersigned heard testimony from petitioner, James Baumann, and his wife, Denise Baumann.  The undersigned felt that Mr. and Mrs. Baumann credibly explained Mr. Baumann's prior pre-vaccination report of shoulder pain as well as the facts and circumstances of his vaccine injury and his subsequent pattern of treatment for that injury.  Among other things, the Baumanns testified that Mr. Baumann experienced pain immediately following his vaccination as well as limitations in motion immediately or within a week, but that he did not seek immediate medical care due in large part to his lack of health insurance.  Tr. 18, 32-33, 43-44, 59-60. He also testified that he told Dr. Chamberlain he believed his pain was caused by his vaccination, but that she was not receptive to that explanation. Tr. 40, 62-

---

[4] The therapist included an onset date of 11/01/2015 in the record, though his notes do not reflect that petitioner provided a specific date of vaccination.  Nor is a specific vaccination date listed on the patient questionnaire completed by petitioner at that time. Ex. 4, p. 27. The history provided indicates that "Patient reports that he has been experiencing left shoulder pain following a flu shot in November." Ex. 2, p. 37.

[5] At a different point in his record, Dr. Kuhn misplaces the injurious vaccination as having occurred four months prior, which would place it in February of 2016.  Ex. 3, p. 14. In all instances, however, Dr. Kuhn notes that petitioner reported the onset of his shoulder pain as related to the flu shot, occurring "ever since" the vaccination.

63. The undersigned found the testimony to be consistent with and well corroborated by the medical records.

At the conclusion of the hearing, the undersigned read her findings of fact into the record as follows:

> After having reviewed all of the exhibits, the medical records, the record of the orthopedist and physical therapist and heard the testimony today as well as seen the demonstration by Mr. Baumann, I issue the following findings of fact:
>
> The issues requiring this fact hearing today are whether the onset of Petitioner's symptoms occurred within 48 hours, in light of the fact there was a delay in seeking medical treatment. The time period for the first manifestation of symptoms for a shoulder injury related to vaccine administration, under the rules and regulations which govern the Vaccine Program is less than 18 or equal to 48 hours. I find that the date of vaccination was November 19th, 2015, and I find that the location or site of administration was the left arm. I base that on the medical records and the testimony given today.
>
> A vaccine recipient shall have considered to have suffered SIRVA, or shoulder injury related to vaccine administration, if the recipient manifests the following: First, no history of pain, inflammation or dysfunction of the affected shoulder prior to IM vaccine administration that would explain the alleged signs, symptoms, examination findings and/or diagnostic studies occurring after the vaccine injection.
>
> With regard to the first criteria, I find that Mr. Baumann had no history of pain, inflammation or dysfunction of his left shoulder prior to flu vaccine administration. His medical records do contain entry of a shoulder injury, which occurred in 2014.[6] Mr. Baumann and his wife have testified today that that occurred in his right shoulder and explained the facts and circumstances of that prior injury. That appeared to be a limited injury, and based on the testimony and the medical records, it appeared to involve his right shoulder and not his left shoulder. I find that Mr. Baumann had no prior left shoulder injury or problem and no history of pain, inflammation or dysfunction of his left shoulder which would explain his condition.
>
> The next criteria is that the pain occurred within the specified time frame of 48 hours. As to onset, I find that based on the Petitioner's testimony here today and the documentation by Dr. Kuhn, Dr. Chamberlain and the physical therapist, that he had his onset within 48 hours.[7] I also find that based on the testimony of Denise Baumann, and I find her testimony on that issue to be credible.

---

[6] *See* Ex. 5, p. 59.
[7] *See, e.g.* Ex. 2, pp. 18, 21, 28, 37-38; Ex. 3, pp. 13-15.

The next criteria is that the pain and reduced range of motion be limited to the shoulder in which the IM vaccine was administered. Based on the medical records from the orthopedic -- orthopedist,[8] the physical therapist[9] and the testimony here today, I find that Petitioner's pain and reduced range of motion are limited to his left shoulder, in which the vaccine was administered. I also find that based on the testimony Mr. and Mrs. Baumann given here today.

The next criteria is that there be no other condition or abnormality that would explain the patient's symptoms. Based on my review of all of the medical records and the testimony given here today, I find there is no other condition or abnormality that would explain Mr. Baumann's symptoms.

This concludes my findings.

Tr. 78-80.

## IV.    Ruling on Entitlement

Effective for petitions filed beginning on March 21, 2017, a shoulder injury related to vaccine administration, or "SIRVA," is an injury listed on the Vaccine Injury Table ("Table").  *See* National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Final Rule, 82 Fed. Reg. 6294, Jan. 19, 2017; National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Delay of Effective Date, 82 Fed. Reg. 11321, Feb. 22, 2017 (delaying the effective date of the final rule until March 21, 2017).  Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine.  42 C.F.R. § 100.3(a). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation are as follows:

A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(b)(10).

---

[8] *See* Ex. 3.
[9] *See* Ex. 4.

**In view of the evidence of record and the above factual findings, the undersigned finds that petitioner is entitled to compensation for a SIRVA.**

**IT IS SO ORDERED.**

<u>**s/Nora Beth Dorsey**</u>
Nora Beth Dorsey
Chief Special Master